UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Brett A. Currier &
Brenda L. Currier

    v.

Town of Gilmanton &
Marshal Bishop

Civil No. 18-cv-1204-LM
Opinion No. 2022 DNH 131P

## O R D E R

Plaintiffs Brett and Brenda Currier sued defendants the Town of Gilmanton
and Marshall Bishop, alleging defamation, violation of RSA 91-A, New Hampshire's
Right-to-Know Law, and violation of the First Amendment.  Defendants moved for
summary judgment on all claims against them, and the court granted the motion as
to all claims except for First Amendment retaliation.  Doc. no. 47.  The Curriers now
move for partial reconsideration of the court's order.  Doc. no. 50.

To prevail on a motion to reconsider the moving party must show "that the
order was based on a manifest error of fact or law . . . ."  L.R. 7.2(d); Palmer v.
Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006).  After carefully reviewing the
Curriers' motion, the court concludes that they have failed to show that the order
was based on manifest errors of fact or law, with one exception related to alleged
defamatory statements in a letter Bishop sent to the New Hampshire Attorney
General.  Nevertheless, the court grants summary judgment with respect to these
statements on alternative grounds.  Accordingly, the court denies the Curriers'
motion to reconsider.

## BACKGROUND

The court recounted the lengthy factual background in detail in its original order, and only briefly recounts the facts relevant to the instant order here.  Bishop owns the Gilmanton Winery & Vineyard.  In March 2016, he defeated Brett in a Gilmanton Board of Selectmen election.  After that date, the relationship between the Curriers, Bishop, and other officials in the Town of Gilmanton quickly soured.

On July 13, 2016, Bishop sent a letter to the New Hampshire Attorney General using Gilmanton Winery & Vineyard letterhead and copying Gilmanton Town Administrator Paul Branscombe.  In the letter, Bishop sought the Attorney General's advice on how to respond to what he viewed as the Curriers' threats to his livelihood and misuse of RSA 91-A to harass him.  He offered several examples.  First, he recounted an interaction between himself and Brett at his winery in early May 2016 where Brett told him that he should be careful in his role as a public official because the Town did not have enough insurance to cover his personal liabilities.

Second, he recounted an interaction between himself and Brenda after a Board of Selectmen meeting in mid-May 2016.  He stated that during this conversation Brenda told him to remove signs advertising the winery from property she owned and that had formerly been her mother's.  He further stated that Brenda was upset because she felt the Board of Selectmen had unfairly terminated her friend.  According to the letter, Brenda informed Bishop that because he had taken away her friend's livelihood, she would take away his livelihood.  Finally, Bishop stated that the Curriers had filed complaints and RSA 91-A requests with several

state and local government entities regarding the winery's compliance with various regulations and permitting requirements.

It is undisputed that members of the public subsequently obtained copies of this letter. Defendants dispute, however, that either Bishop or Branscombe distributed the letter to the public. In his deposition testimony, Bishop acknowledged that members of the public received copies of the letter but stated that no one knew how this happened.

For their part, the Curriers do not dispute that they sought information about the winery from public entities, including by filing RSA 91-A requests. Moreover, the Curriers do not dispute that their respective conversations with Bishop referenced in the letter occurred. Nor do the Curriers dispute that, during the conversation between Brett and Bishop, Brett warned Bishop to be careful about exposing himself to personal liability. With respect to the conversation between Brenda and Bishop, however, the Curriers maintain that she did not threaten his livelihood; she merely informed him that he needed to remove the signs because her mother did not want to support his livelihood after the harm he caused to her friend's.

The Curriers allege that Bishop's statements in the letter that the Curriers were threatening his livelihood and misusing RSA 91-A to harass him were defamatory because, they contend, neither their statements nor actions constituted threats to his livelihood or misuse of RSA 91-A. They further contend that Bishop

and the Town may be liable for the defamatory statements in the letter because either Bishop or Branscombe publicly distributed the letter.

In their motion for summary judgment, defendants argued that the court should grant judgment with respect to the alleged defamation in this letter for two reasons. First, they argued that the statements in the letter were protected by the absolute immunity from defamation afforded to statements made in the course of judicial proceedings. Second, they argued that the allegedly defamatory statements in the letter were non-actionable opinions.

Because it was dispositive, the court solely addressed whether defendants were entitled to immunity. Under New Hampshire law, statements made in the course of judicial proceedings, including those preliminary to proceedings such as a complaint to prosecutors, are subject to an absolute immunity from defamation claims. See McGranahan v. Dahar, 119 N.H. 758, 762-63 (1979); 2 Law of Defamation § 8:5 (2d ed.). That immunity does not apply, however, where defendants subsequently republish the statements outside of the judicial proceedings. 2 Law of Defamation § 8:17 (2d ed.). In its order, the court found that because Bishop made these statements to a prosecuting authority, the New Hampshire Attorney General, the immunity for statements made during judicial proceedings applied. The court acknowledged the Curriers' contention that Bishop or Branscombe publicly distributed the letter after sending it to the Attorney General. But the court found this did not bar summary judgment because there was no evidence that Bishop or Branscombe publicly distributed the letter, relying

4

in part on Bishop's deposition testimony that he did not release the letter and that he did not know how it became public.

## DISCUSSION

The Curriers move for reconsideration of that finding, arguing that, viewing the facts in their favor, there was a reasonable inference that Bishop or Branscombe publicly distributed the letter despite the lack of direct evidence.  Upon reconsideration, the court agrees with the Curriers.  From the record, Bishop, Branscombe, and the New Hampshire Attorney General's Office were the only parties in possession of the letter.  Based on the circumstances of this case, particularly the parties' acrimonious relationship, a reasonable factfinder could conclude that either Bishop or Branscombe released the letter to the public.  See Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013) (holding that, when ruling on a motion for summary judgment, district courts must construe all facts and make all reasonable inferences in favor of the nonmoving party).

If a jury found that either Bishop or Branscombe publicly released the letter, the immunity for judicial proceedings would not apply, and either Bishop or the Town could be liable for the allegedly defamatory statements.  2 Law of Defamation § 8:17 (2d ed.).  Therefore, the court must now consider defendants' alternative basis for summary judgment: that the statements in the letter were nonactionable statements of opinion based on disclosed facts.

Under New Hampshire law, a "plaintiff proves defamation by showing that the defendant failed to exercise reasonable care in publishing a false and

5

defamatory statement of fact about the plaintiff to a third party." Pierson v. Hubbard, 147 N.H. 760, 763 (2002). To be "true," a statement only needs to be "substantially true," which does not require that every detail in the statement be accurate. Boyle v. Dwyer, 172 N.H. 548, 554 (2019). Rather, a statement is "substantially true" if the substance or "gist or sting" of the statement is justified. Id. Although the substantial truth of a statement is normally one of fact for the jury, a court may decide the issue as a matter of law when the "underlying facts as to the gist or sting" are undisputed. Id.

In addition, the First Amendment to the United States Constitution imposes certain restraints on state defamation law, including that only statements that present or imply the existence of facts that can be proven true or false can be actionable as defamation. Gray v. St. Martin's Press, Inc., 221 F.3d 243, 247 (1st Cir. 2000); see also Thomas v. Tel. Publ'g Co., 155 N.H. 314, 338 (2007). That said, an opinion statement may still be actionable when it implies the existence of undisclosed factual statements that are themselves defamatory. Gray, 221 F.3d at 248. The determination of whether a statement relates to a verifiable fact or a subjective opinion is one ordinarily decided by judges as a matter of law. Id.; Thomas, 155 N.H. at 338.

Here, the allegedly defamatory statements in the letter—that the Curriers were threatening Bishop's livelihood and misusing RSA 91-A—were Bishop's opinions about the Curriers' actions based on non-defamatory facts he disclosed in the letter. While they dispute his characterization of their actions, the Curriers do

not materially dispute the underlying events on which he bases his opinions. For example, they do not dispute that they filed requests under RSA 91-A or that Brett warned Bishop about exposure to personal liability at the winery.

The one instance in which the Curriers present potentially contradictory evidence about the underlying facts relates to the discussion between Brenda and Bishop after the Board of Selectmen meeting in May 2016. According to the letter, Brenda told Bishop she would take away his livelihood. According to Brenda, she merely told Bishop to remove the signs from her property because her mother did not want to support his livelihood. This is not enough to support a defamation claim. As an initial matter, the letter explained the undisputed context in which Brenda made these statements, i.e., her demand that he remove the sign advertising his winery from her property. And, assuming Brenda's version of the conversation is true, her statement reasonably implied that her purpose in removing the sign was to affect the winery's business. Even assuming Bishop slightly misstated her comments, the minor discrepancy in their versions of the conversation does not create a question of material fact as to whether his statement was false or whether Bishop (or Branscombe) "failed to exercise reasonable care" in making the statement or republishing the letter, both of which are required to prove defamation. Pierson, 147 N.H. at 763; see also Boyle, 172 N.H. at 554 (holding that minor inaccuracies in a statement do not make it false as long as the substance, gist, or sting of the statement is correct).

Moreover, as the court concluded in its original order, the Curriers were limited purpose public figures with respect to the winery dispute. Therefore, statements about them would not be defamatory unless they met the "actual malice" threshold—which requires that the defendant either knowingly or recklessly make the false statements. Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 12 (1st Cir. 2011). Actual malice must be shown through the higher clear and convincing evidence standard. Masson v. New Yorker Magazine, 501 U.S. 496, 510 (1991). Reading the facts as generously as possible in the Curriers' favor, the minor difference between Bishop's and Brenda's accounts of their conversation does not support an inference that Bishop (or Branscombe) knowingly or recklessly republished a letter containing false statements. At the very least, Bishop's version was a reasonable interpretation of Brenda's comments, and there is no evidence— never mind the clear and convincing evidence needed to prove actual malice—that either Bishop or Branscombe doubted this interpretation when they allegedly republished the letter. See Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 511 (1984) ("Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold that bars the entry of any judgment that is not supported by clear and convincing proof of 'actual malice.'").

Accordingly, these statements were not defamatory and both Bishop and the Town are entitled to summary judgment. As the Curriers have otherwise failed to

show that the original order was premised on manifest errors of fact or law, there is

no basis for the court to reconsider the original order.

## CONCLUSION

The court denies the Curriers' motion for reconsideration (doc. no. 50).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 20, 2022

cc:  Counsel of Record